## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ADRIAN T. HORRELL,** | : | |
| **Plaintiff** | : | **No. 1:20-cv-01454** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **ABB ENTERPRISE SOFTWARE,** | : | |
| **Successor to ABB TROPOS WIRELESS** | : | |
| **RESEARCH  CENTER,** | : | |
| **A DIVISION OF ABB, INC.,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the Court is Defendant ABB Enterprise Software, Successor to ABB Tropos Wireless Research Center, a Division of Defendant ABB, Inc. ("Defendants")[1] Motion to Dismiss Plaintiff Adrian T. Horrell ("Plaintiff")'s Amended Complaint (Doc. No. 8).  For the reasons provided herein, the Court will grant Defendants' motion to dismiss and provide Plaintiff the opportunity to file a second amended complaint.

## I.      BACKGROUND[2]

Plaintiff is an adult individual who resides at 7080 Creek Crossing Road, Harrisburg, Dauphin County, Pennsylvania.  (Doc. No. 4 ¶ 1.)  Plaintiff alleges that Defendant ABB Inc. is a "Delaware corporation with offices at 3055 Orchard Drive, San Jose, California (hereinafter 'the company')" that has at all relevant times regularly conducted business in Pennsylvania and employs Plaintiff at his home office in Harrisburg.  (Id. ¶¶  2-3.)

---

[1]  Defendants maintain that the proper Defendants in this matter are ABB Enterprise Software Inc. and ABB Inc., and that Plaintiff incorrectly named the Defendants in this matter as ABB Enterprise Software, Successor to ABB Tropos Wireless Research Center, a Division of ABB Inc. (Doc. No. 8 at 1.)

[2] The following factual allegations, accepted as true for purposes of the instant motion to dismiss, are taken from Plaintiff's Amended Complaint.  (Doc. No. 4.)

Plaintiff asserts that on or about December 4, 2012, he accepted a written offer of employment with the company for the position of Sales Director – Great Lakes/North East Region.  (Id. ¶ 4.)  Plaintiff alleges that "[t]he offer provided that the Plaintiff would be compensated with a base salary and an incentive compensation plan that provided for commissions based on sales," and attaches a copy of the written offer of employment as Exhibit A to his Amended Complaint.  (Id.; Doc. No. 4-1.)  Plaintiff asserts that he remains employed by the company as the sales director for the North East Region of the USA and Canada, with a sales territory including "Ohio, Pennsylvania, New York, New Jersey, Rhode Island, Connecticut, Massachusetts, Vermont, New Hampshire, Maine, Eastern Canada and other specific accounts in the USA."  (Id. ¶ 5.)

Plaintiff's Amended Complaint attaches as Exhibit B a copy of the company's 2018 calendar year Sales Incentive Compensation Plan ("SICP") which he alleges "provided for a commission on sales generated at a rate of five percent (5%) for sales exceeding one hundred percent (100%) of the individual's quota."  (Id. ¶ 6; Doc. No. 4-2.)  Plaintiff asserts that "[f]rom the commencement of his employment, Plaintiff has exceeded his sales quotas in five (5) of his eight full years and has le[]d the company in sales bookings in six (6) of his eight (8) full years for the business unit globally," and that "[a]t no time from 2012 to 2018 was there any limit on commissions or limitations on large orders that could be earned by the company's sales force and specifically by the Plaintiff."  (Id. ¶¶ 7-8.)

Plaintiff alleges that "[f]rom the commencement of his employment, [he] began cultivating a relationship with the executives of FirstEnergy in an effort to make a substantial sale on behalf of the company," and that "[a]t the end of 2018, Plaintiff was near closing three orders over a three-year period with FirstEnergy, totaling in excess of sixteen million three

hundred thousand dollars ($16,300,000.00)."  (Id. ¶ 9.)  Plaintiff further alleges that "[a]t the direction of his superiors, [he] consolidated the FirstEnergy deal from three (3) purchase orders that would have been completed over three (3) years into one (1) sale, so that the sales numbers would be more beneficial for Plaintiff's superiors in terms of sales numbers and profit margin." (Id. ¶ 10.)  Plaintiff asserts that "[u]pon information and belief" "his superiors' compensation was based, at least in part, on sales numbers and profit margin."  (Id. ¶ 11.)  Plaintiff alleges that the "FirstEnergy deal was one of the largest ever by the company in the United States and the second largest ever for the Plaintiff's sales region," and that Plaintiff "was the responsible sales representative for two (2) of the three (3) largest sales in the history of the company, worldwide." (Id. ¶¶ 12-13.)

Plaintiff alleges that "[a]t all times relevant hereto, the company employed a management team consisting of Brian Carlson, VP Sales North America, Canada & Mexico PGGA, Mike Carlson, SVP Sales and Marketing PGGA, Darren Caldwell, SVP and General Manager Automation and Communication PGGA, Mike Atkinson, Hub Manager PGGA USA, Jeff Simmons, HR Hub Manager PGGA, and Massimo Danielle, Managing Director Business Unit Grid Automation."  (Id. ¶ 14.)  Plaintiff asserts that "[f]rom 2019 until 2020, the management team represented to Plaintiff that the company would exercise its discretion to include the combined award of the FirstEnergy deal under the 2018 SICP verbally and via emails," and that he "reasonably relied on the representations of the management team that the 2018 SICP would apply to the FirstEnergy sale."  (Id. ¶¶ 15-16.)

Plaintiff alleges that "[i]n 2019, the company unilaterally changed the SICP plan for its sales force, reducing the top compensation rate from five percent (5%) to one and one quarter percent (1.25%), creating a special category of 'large orders' (greater than $10,000,000.00), and

capping the total commission that could be earned at five hundred thousand dollars ($500,000.00)," and that, at the time, he "was the only employee of the company who had a pending sale of a 'large order' (in excess of $10,000,000.00)." (Id. ¶ 17.) Finally, Plaintiff asserts that he "never signed nor agreed to the 2019 SICP, which fact was communicated to the management team verbally and via email on several occasions throughout 2019." (Id. ¶ 18.)

On August 17, 2020, Plaintiff filed his initial complaint against Defendants (Doc. No. 1), and subsequently, on September 10, 2020, filed an Amended Complaint (Doc. No. 4) changing the naming of the Defendants.[3]  The Amended Complaint asserts claims of breach of contract (Count 1), fraud (Count 2), negligent misrepresentation (Count 3), promissory estoppel (Count 4), and a wage claim under California law (Count 5), arising out of Defendants' failure to pay Plaintiff $748,511.69 in commission payments associated with the FirstEnergy transaction that he alleges was due him pursuant to the 2018 SICP.  Defendants filed a motion to dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief may be granted (Doc. No. 8), with a brief in support (Doc. No. 9), on November 9, 2020.  Plaintiff filed a brief in opposition to Defendants' motion on November 20, 2020 (Doc. No. 12), and Defendants filed a reply brief on December 4, 2020 (Doc. No. 15).  Accordingly, the motion has been fully briefed and is ripe for disposition.

## II.    LEGAL STANDARD

---

[3]  The only difference between Plaintiff's complaint and Amended Complaint appears to be his designation of the Defendants in this matter.  In his complaint Plaintiff describes the defendants in this matter as follows: "ABB Tropos Wireless Research Center, is a division of ABB, Inc., a Swiss-Swedish international corporation."  (Doc. No. 1 ¶ 2.)  In his Amended Complaint Plaintiff describes the defendants in this matter as follows: "ABB Enterprise Software, a Delaware corporation, successor in interest to ABB Tropos Wireless Research Center, is a division of ABB, Inc., a Delaware corporation."  (Doc. No. 4 ¶ 2.)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d. Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.  See id.  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district

court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" See Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

## III.   DISCUSSION

The parties dispute both which state's law governs Plaintiff's various claims, as well as whether the Amended Complaint pleads claims upon which relief may be granted under the relevant law. The Court first sets forth relevant legal principles regarding its choice of law, and then addresses each claim in turn.

### A.     Legal Standard - Choice of Law

A federal court sitting in diversity jurisdiction applies "the choice-of-law rules of the forum state," which, of course, is Pennsylvania. See Hammersmith v. TIG Insur. Co., 480 F.3d

6

220, 226 (3d Cir. 2007).  With specific regard to breach of contract claims, "Pennsylvania courts

generally honor the intent of the contracting parties and enforce choice of law provisions in

contracts executed by them."  See Kruzits v. Okuma Machine Tool, Inc., 40 F.3d 52, 55 (3d Cir.

1994) (citation omitted).  Pennsylvania courts have adopted Section 187 of the Restatement

(Second) of Conflict of Laws, which provides that:

> (1) The law of the state chosen by the parties to govern their contractual rights
> and duties will be applied if the particular issue is one which the parties could
> have resolved by an explicit provision in their agreement directed to that
> issue.
> (2) The law of the state chosen by the parties to govern their contractual rights
> and duties will be applied, even if the particular issue is one which the parties
> could not have resolved by an explicit provision in their agreement directed to
> that issue, unless either
> (a) The chosen state has no substantial relationship to the parties or the
> transaction and there is no other reasonable basis for the parties' choice, or
> (b) Application of the law of the chosen state would be contrary to a fundamental
> policy of a state which has a materially greater interest than the chosen state in
> the determination of the particular issue . . . .

See Kruzits, 50 F.3d at 55 (quoting Restatement (2d) of Conflict of Laws § 187) (1971)).

In addition, "the extent to which, and to what types of claims, Pennsylvania courts will

apply a choice of law provision in a contract is determined by a number of factors."  See Grimm

v. Citibank (South Dakota), N.A., No. 08-788, 2008 WL 4925631, at *4 (W.D. Pa. Nov. 14,

2008).  "One such factor is the breadth of the contractual choice of law provision," as "[n]arrow

choice of law provisions stating that a contract's terms or enforcement are to be governed, or

construed, by the laws of another state are generally interpreted by Pennsylvania courts to relate

only to the construction and interpretation of the contract at issue."  Id. (citing Jiffy Lube Int'l,

Inc. v. Jiffy Lube of Pa., Inc., 848 F. Supp. 569 (E.D. Pa. 1994)).  In that regard, "[c]ontractual

choice of law provisions . . . do not govern tort claims between the contracting parties unless the

fair import of the provision embraces all aspects of the legal relationship."  See Jiffy Lube, 848

F. Supp. at 576.  Accordingly, as a general matter, "with respect to tort claims, courts within this circuit have held that 'narrow choice of law provisions are generally held insufficient to encompass the contracting parties' tort claims.'"  See Grimm, 2008 WL 4925631, at *4 (quoting Wright v. McDonald's Corp., No. 91-2061, 1993 WL 53582, at *7 n.6 (E.D. Pa. 1993)).

Further, in the absence of an applicable explicit choice of law provision, if the law of two jurisdictions is the same, then there can be no conflict between the two states' laws, and a choice of law analysis is unnecessary.  See Hammersmith, 480 F.3d at 230.  "Thus, the first part of the choice of law inquiry is best understood as determining if there is an actual or real conflict between the potentially applicable laws."  Id. (emphasis in original).  "If there are relevant differences between the laws, then the court should examine the governmental policies underlying each law, and classify the conflict as a 'true,' 'false,' or an 'unprovided-for' situation."  See id.  If a true conflict exists between the two states' laws, then "the [c]ourt must then determine which state has the 'greater interest in the application of its law.'"  See id. at 231 (quotation omitted).  The relevant methodology to be applied in making that determination is "a combination of the 'approaches of both [the] Restatement II (contacts establishing significant relationships) and "interests analysis" (qualitative appraisal of the relevant States' policies with respect to the controversy.'"  See id. (internal quotation omitted).  Accordingly, this approach entails "more than a 'mere counting of contacts.'"  See id. (quotation omitted).

### B.    Breach of Contract Claim

The parties dispute which state's law – Pennsylvania or California – applies to Plaintiff's breach of contract claim (Count 1), as well as whether Plaintiff's Amended Complaint states a breach of contract claim under the applicable law.  With regard to the choice of law issue, the source of the parties' dispute is rooted in a choice of law provision contained in Plaintiff's

December 4, 2012 offer letter (the "Offer Letter"), which states that "[t]his letter will be governed by the laws of California, without regard to its conflict of laws provisions." (Doc. No. 4-1 at 2 ¶ 9.) Accordingly, Plaintiff maintains that California law should apply to his breach of contract claim, while Defendants maintain that Pennsylvania law applies to Plaintiff's breach of contract claim based on his incentive compensation, because they maintain that the "Offer Letter does not govern or guarantee Plaintiff's right to a specific amount of incentive compensation, including the commission he seeks," and "Plaintiff's commission payments on transactions that occurred in 2019 are governed by a separate compensation agreement, the 2019 SICP." (Doc. No. 9 at 9.)[4]

More specifically, Defendants maintain that the Offer Letter does not govern Plaintiff's entitlement to incentive compensation, as it particularly references a separate "written incentive compensation plan" that will control Plaintiff's potential entitlement to commissions, and argue that, at the time of the transaction for which Plaintiff seeks payment of commissions, the applicable incentive compensation plan was the 2019 SICP. (Doc. No. 9 at 9.) The 2019 and 2018 SICPs contain no choice of law provision. (See Doc. Nos. 4-2, 9-3.) Accordingly, Defendants argue that the Offer Letter's choice of law provision should not be enforced because it is inapplicable to the facts of this case. (Id. at 10.)

In addition, assuming that the Offer Letter's choice of law provision does not apply to claims arising under the 2019 SICP, Defendants argue that the state of California has "absolutely

---

[4]  Defendants attach a copy of the 2019 SICP as an exhibit to their brief in support of their motion to dismiss. (Doc. No. 9-3.) Because Plaintiff's Amended Complaint specifically references the 2019 SICP and its relationship to his claims (Doc. No. 4 ¶¶ 33-34), the Court can consider the 2019 SICP without converting the instant motion into one for summary judgment. See Burton v. Nationstar Mortg., LLC, 255 F. Supp. 3d 616, 619 (E.D. Pa. 2015) (noting "that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment") (internal quotations and citations omitted).

no interest in this litigation," much less a "substantial relationship to the parties or transaction."
(<u>Id.</u>)  Defendants note that Plaintiff alleges that he is a resident of Pennsylvania and that
Defendants conduct business in Pennsylvania, employing Plaintiff at his home office in
Harrisburg, Pennsylvania.  (<u>Id.</u>)  Defendants further note that Plaintiff alleges that he was hired
for the position of "Sales Director" for the "Great Lakes/Northeast Region," and that his sales
territory includes Ohio, Pennsylvania, New York, New Jersey, Rhode Island, Connecticut,
Massachusetts, Vermont, New Hampshire, Maine, and Eastern Canada.  (<u>Id.</u>)  Further,
Defendants maintain that the entity that sent Plaintiff the Offer Letter has been acquired by
Defendants and "no longer exists," noting that Plaintiff's Amended Complaint acknowledges
that he is now employed by Defendants, which are Delaware corporations.  (<u>Id.</u>)[5]

Defendants also maintain that, even if California had a substantial relationship to this
action, "Pennsylvania still has a materially greater interest in this dispute."  (Doc. No. 9 at 10.)
Defendants argue that all of the relevant considerations assessed when determining which state
has a materially greater interest in this dispute weigh in favor of applying Pennsylvania law to
Plaintiff's breach of contract claim, noting that "[t]he Offer Letter was mailed to Plaintiff's
residence in Pennsylvania"; "Plaintiff was offered the position of Sales Director for the 'Great
Lakes/Northeast Region'"; "[Plaintiff's] sales territory includes Pennsylvania"; and "Defendants
'regularly conduct business in Pennsylvania and employ Plaintiff at his home office in
Harrisburg, Pennsylvania'".  (<u>Id.</u> at 11.)  Defendants reiterate that the Offer Letter does not
purport to govern Plaintiff's incentive compensation;  however, the 2018 SICP and 2019 SICP

---

[5] Defendants request that this Court take judicial notice of the California and North Carolina
Secretary of State's websites which confirm that the entity who sent the Offer Letter, "ABB
Tropos Wireless Research Center" no longer exists, and that the named Defendants' principal
offices are located in Cary, North Carolina.  (Doc. No. 9 at 10 n.2.)

"specifically address the commission disputed in this case" and neither document "contain[s] a choice of law provision or reference the Offer Letter," supporting Defendants' argument that the Offer Letter "is inapplicable to Plaintiff's claims and its choice of law provision should not be enforced."  (Id.)

Defendants further argue that, under Pennsylvania law, Plaintiff has failed to state a breach of contract claim based on the 2019 SICP or 2018 SICP.  Defendants first maintain that Plaintiff's refusal to sign the 2019 SICP does not mean that Defendants are "contractually obligated to apply the terms of the expired 2018 SICP to a sale that occurred in 2019."  (Doc. No. 9 at 17.)   They argue that "[t]he express terms of the 2018 SICP demonstrate Defendants did not manifest any intent to apply the 2018 SICP to a transaction that occurred in 2019,"  because the "2018 SICP explicitly states that it was effective from 'January 1, 2018 to December 31, 2018.'"  (Id. at 18.)  They maintain that "[b]ecause the First Energy sale was awarded in 2019, the terms of the 2018 SICP clearly dictate that it does not apply," and that "the 2019 SICP applies to transactions that occurred in 2019, including the one at issue."  (Id.)  Second, Defendants argue that because the 2018 SICP, which Plaintiff maintains governs his entitlement to incentive compensation, "contains terms reserving Defendants' right to 'announce exclusions, modifications, and exceptions . . . at any time with no notice[,]' and 'make adjustments in the amount and distribution of incentive compensation . . . .'" means that no contract or entitlement to any particular incentive compensation was established by the 2018 SICP given Defendants' discretion to modify any compensation awarded under the 2018 SICP at any time.  (Id. at 18-19.)

In response to these arguments, Plaintiff first maintains that California law must apply to his breach of contract claim.  (Doc. No. 12 at 5-6.)    Plaintiff maintains that the rate of his sale commission was "explicitly address[ed] in the December 4, 2012 contract," and "[a]lthough the

11

rate and sales targets changes, the parties could have and did address [Plaintiff's] compensation rate at the time"; therefore, he maintains that California law "applies to the matters arising from the employment contract."  (Id. at 6.)  Plaintiff maintains that this conclusion is supported by reference to Section 187(1) of the Restatement of Conflict of Laws, which Pennsylvania courts apply before considering Section 187(2)'s provisions regarding whether a particular state has a substantial relationship to the parties or the transaction at issue.  (Id. at 6) (citing Synthes USA Sales, LLC v. Harrison, 83 A.3d 242, 252 (Pa. Super. 2013)).

Plaintiff further argues that, even under Section 187(2) of the Restatement (Second) of Conflict of Laws, "California clearly has a substantial relationship to the parties and the transaction, irrespective of whether the company's successor is now incorporated in another state."  (Id.)  Plaintiff maintains that, at the time he entered into his contract in December 2012, "ABB Tropos was headquartered in Sunnyvale, California," and further, that "[t]he company's successor, ABB Enterprise Software, has offices at 3055 Orchard Drive, San Jose, California."  (Id.)[6]

---

[6]  In further support of his position that California has a substantial relationship to the parties and the contract, Plaintiff maintains that "business cards that the company has issued to Adrian Horrell have all listed Sunnyvale or San Jose California as his address," and attaches copies of those business cards to his brief in opposition to Defendants' motion to dismiss.  (Doc. No. 12 at 6; Doc. No. 12-1.)  Defendants correctly note that in deciding a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached thereto, and matters of public record."  (Doc. No. 15 at 8) (quoting Beverly Enters., Inc. v. Trump, 182 F.3d 183, 190 (3d Cir. 1999)).  They further correctly note that a "complaint may not be amended by the briefs in opposition to a motion to dismiss."  (Id.) (quoting Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 172, 181 (3d Cir. 1988)).  Accordingly, Defendants urge the Court to strike Doc. No. 12-1 as it seeks to supplement the factual averments contained in the Amended Complaint.  (Doc. No. 15 at 7-8.)  To the extent Plaintiff seeks to supplement the factual averments of the Amended Complaint by way of an exhibit to his brief in opposition to his motion to dismiss, such an effort is improper.  See Steinagel v. Valley Oral Surgery, No. 12-05645, 2013 WL 5429269, at *5 (E.D. Pa. Sept. 30, 2013) (finding that plaintiff's declaration attached to brief was a matter outside the pleadings not to be considered on a motion to dismiss, as the declaration was not referenced in the complaint, was not a matter of public record, and was not attached to the complaint, but instead constituted an improper attempt to provide

Plaintiff's desire to apply California law to his breach of contract claim appears to stem from the following provision of California law, which Plaintiff maintains supports his claim that the terms of the expired 2018 SICP apply to the disputed commission instead of the 2019 SICP and give rise to a contractual right to the disputed commission:

> the employer shall give a signed copy of the contract to every employee who is a party thereto and shall obtain a signed receipt for the contract from each employee . . . [i]n the case of a contract that expires and where the parties nevertheless continue to work under the terms of the expired contract, the contract terms are presumed to remain in full force and effect until the contract is superseded or employment is terminated by either party.

Cal. Labor Code § 2751(b).

As set forth more fully above, courts sitting in Pennsylvania "generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." See Kruzits, 40 F.3d at 55.  Accordingly, the Court's starting point in determining which state's law applies to the parties' dispute is the contract that forms the basis of the parties' relationship, the December 4, 2012 Offer Letter.  The Offer Letter contains a choice of law provision, stating that "[t]his letter will be governed by the laws of California, without regard to its conflict of law provisions."  (Doc. No. 4-1 at 2 ¶ 9.)  An attachment to the Offer letter, a Confidential Information and Invention Assignment Agreement, also contains a choice of law provision calling for the application of California law to that agreement.  (Id. at 6 ¶ 9.)

---

supplemental factual averments).  While Defendants urge the Court to "strike" Doc. No. 12-1 from the record, because the federal rules provide no basis for striking material outside of the pleadings, see Fed. R. Civ. P. 12(f) (providing that "[t]he court may strike from a pleading"), the Court is persuaded that the better approach is to simply disregard any documents or information improperly before the Court.  See Sfakianos v. Shelby County Gov't, No. 08-2172, 2010 WL 4791680, at *2 (W.D. Tenn. Aug. 2, 2010) (recognizing that the federal rules do not provide a means to strike exhibits filed in connection with an opposition brief and therefore choosing to exclude from consideration any portions of exhibits not properly before the court).

The Offer Letter contains a two-part paragraph governing compensation.  It provides as follows:

a.  Base Compensation.  You will be paid a monthly salary of $10,416.67 which is equivalent to $125,000 on an annualized basis, subject to applicable tax withholdings.  Your salary will be payable in two equal payments per month pursuant to the Company's regular payroll policy (or in the same manner as other similarly situated employees of the Company).

b.  Incentive Compensation Plan.  In addition to your base salary, you will be eligible for an incentive compensation plan (subject to applicable tax withholdings) based on your achievement of mutually agreed upon revenue based performance goals.  These goals will be set forth in a written incentive compensation plan and will amount to $125,000 based on achievement of 100% of quota.  The incentive compensation plan is subject to quarterly review and is currently paid on a monthly basis.  You are eligible to receive one time non-recoverable draw in the amount of $15,000 (subject to applicable tax withholdings).  The non-recoverable draw will be payable in three equal payments of $5,000 in January, February & March 2013.  If commission earned, per the incentive compensation plan, is greater than the total non-recoverable draw of $15,000 for the three months, you will receive the difference between the commission earned plus the non-recoverable draw amount of $15,000.  If commission earned, per the incentive compensation plan, is less than the total non-recoverable draw of $15,000 for the three months, you will receive the non-recoverable draw amount of $15,000.

(Doc. No. 4-1 at 1-2.)  The Offer Letter clearly states that Plaintiff's eligibility for incentive compensation "will be set forth in a written compensation plan."  The parties agree that the 2018 and 2019 SICPs that are before the Court in connection with Plaintiff's Amended Complaint and Defendants' motion to dismiss constitute the "written compensation plan" to which the Offer Letter refers.  The Court's review of the 2018 and 2019 SICPs reveals no choice of law provision in either document.

Accordingly, the issue before the Court is whether the choice of law provision in the Offer Letter is applicable to the separate written incentive compensation plan referred to in the Offer Letter.  The Court notes that neither party has cited to the Court any legal authority governing the instant situation, with Defendants maintaining that the Offer Letter's choice of law

provision is "inapplicable" to either the 2018 or 2019 SICP, which address Plaintiff's disputed commission and do not reference the Offer Letter, and Plaintiff arguing that "[t]he rate of [Plaintiff's] sales commission was explicitly address[ed] in the December 4, 2012 contract," and that "[a]lthough the rate and sales targets changed, the parties could have and did address [Plaintiff's] compensation rate at the time." (Doc. No. 12 at 6.)

The Court finds it unnecessary to definitively resolve this particular dispute as to the construction of the terms of the Offer Letter and the written compensation plans to which it refers in an effort to determine if the Offer Letter's choice of law provision extends to the 2018 or 2019 SICPs, because, even assuming <u>arguendo</u> that California law applies to Plaintiff's breach of contract claim, as he urges, and further assuming <u>arguendo</u> that such law dictates that the terms of the 2018 SICP remained in effect in 2019 due to Plaintiff's failure to sign the 2019 SICP, as he suggests, Plaintiff's Amended Complaint still fails to state a claim for breach of contract based on the 2018 SICP. This is so because the 2018 SICP contains several provisions expressly reserving to Defendants the discretion to modify the terms governing an employee's right to incentive compensation under the SICP. First, the 2018 SICP contains an explicit reservation of Defendants' "right to announce exclusions, modifications, and exceptions to [the SICP and Sales Incentive Compensation Policy] at any time with no prior notice." (Doc. No. 4-2 at 1.) The 2018 SICP further states that "[t]his Plan is subject to amendment, modification, or termination at the discretion of [Defendants] at any time with no prior notice." (<u>Id.</u> at 4.) Significantly, the 2019 SICP twice states that "[Defendants] further reserve[] the right to make adjustment in the amount and distribution of incentive compensation in the event of circumstances unforeseen or to insure a fair and equitable final arrangement." (<u>Id.</u> at 1, 2.) In other words, by its express terms, the provisions of the 2018 SICP do not contractually obligate

Defendants to provide Plaintiff with any particular level of incentive compensation.  This is so under either California law or Pennsylvania law.

For example, in Pfeister v. International Business Machines Corporation, No. 17-cv-03573-DMR, 2017 WL 4642436 (N.D. Ca. Oct. 16, 2017), a district court applying California law granted an employer's motion for judgment on the pleadings as to the plaintiff's breach of contract claim arising out of his employer's failure to pay incentive compensation pursuant to an Incentive Plan.  The Incentive Plan at issue contained a "right to modify or cancel" provision stating that the employer reserved the right to "modify or cancel the Plan, for any individual or group of individuals, at any time during the Plan period up until any related payments have been earned under the Plan terms," and a "significant transactions" provision stating that the employer "reserve[d] the right to review and, in its sole discretion, adjust incentive achievement and/or related payments associated with a  transaction."  See id. at *1-2.

In concluding that the incentive plan did not constitute an enforceable contract, the court noted that, under California law, the elements of a contract consist of the following: parties capable of contracting, mutual consent, an object, and adequate consideration.  See id. at *3 (citing U.S. ex rel. Oliver v. Parsons Co., 195 F.3d 456, 462 (9th Cir. 1999)).   The court noted that mutual consent requires that "the parties agree on the same thing in the same sense."  See id. (quotation omitted).  Further, the court noted that the terms of a contract "must be sufficiently definite, so that the court may 'ascertain the parties' obligations and . . . determine whether those obligations have been performed or breached.'"  See id. (quotation omitted).  The court concluded that the plaintiff's breach of contract claim failed "because the Incentive Plan is not an enforceable contract," as it did not reflect "the mutual assent or consent of the parties to enter into a contract," as its "right to modify or cancel provision" expressly denied the defendant's

intent to form a contract.  See id.  In addition, the court found that the incentive plan at issue did not satisfy "the contractual requirement of sufficiently definite terms" because it contained "numerous reservations of rights by [defendant], including the [r]ight to [m]odify or [c]ancel [c]lause, which permits [defendant] in its sole discretion to change sales performance objectives and 'applicable incentive payment rates or quotas, target incentives or similar earnings opportunities.'"  See id. at *4. The court also pointed to the "significant transactions" clause which reserved [defendant's] right "in its sole discretion to adjust the incentive payment." See id.  Under such circumstances, the court concluded that the lack of mutual consent or sufficiently definite terms precluded a finding that the incentive plan constituted an enforceable contract. See id.

The written incentive compensation plan upon which Plaintiff bases his breach of contract claim (the 2018 SICP) is not identical to the incentive plan at issue in Pfeister, as it does not contain an express disclaimer of an intention to contract.  Nevertheless, as discussed above, it contains several provisions expressly reserving to Defendants the discretion to modify the terms governing Plaintiff's right to compensation under the SICP.  They include: a reservation of Defendants' "right to announce exclusions, modifications, and exceptions to [the SICP and Sales Incentive Compensation Policy] at any time with no prior notice"; and a statement that "[t]his Plan is subject to amendment, modification, or termination at the discretion of [Defendants] at any time with no prior notice."  (Doc. No. 4-2 at 1, 4.)  Significantly, the 2018 SICP contains a provision stating that Defendants reserve the "right to make adjustments in the amount and distribution of incentive compensation in the event of circumstances unforeseen or to insure a fair and equitable final arrangement."  (Id. at 1, 2.)[7]  Under such circumstances where the

---

[7] While the 2018 SICP contains a provision stating that "[i]f the Plan is changed or terminated, participants will be entitled to the payment of incentive compensation earned to the time of such

defendant retains the ultimate discretion to adjust incentive compensation, the SICP fails to offer "sufficiently definite" terms such that a court "may 'ascertain the parties' obligations and . . . determine whether those obligations have been performed or breached.'"  See Pfeister, 2017 WL 4642436, at *3 (quotation omitted).  Accordingly, the Court concludes that, under California law, the terms of the SICP (whether it be the 2018 or 2019 version, which contain substantially similar language) are insufficiently definite so as to constitute an enforceable contract.  As noted above, Pennsylvania law is in accord with this conclusion that an employer's retention of discretion to modify or cancel an employee's commission is inconsistent with an enforceable contract.  See Barton v. Hewlett-Packard Co., 635 F. App'x 46, 49 (3d Cir. 2015) (examining a "sales letter" governing the rate at which an employee's commissions would be paid under Pennsylvania law and concluding that, despite the fact that a document may contain certain indicia of a contract, the parties' intent must be determined by the entire writing, and the defendant's "clear, unequivocal, and repeated reservation of the choice to perform defeats any inference that [Defendant] otherwise intended to be bound").  Pursuant to the above authority, Plaintiff's Amended Complaint fails to state a breach of contract claim based on the 2018 SICP (or the 2019 SICP) under either California or Pennsylvania law, and therefore, the Court will grant Defendants' motion to dismiss that claim (Count 1) with prejudice.[8]

---

amendment or termination, assuming continued employment in a sales capacity [with Defendants]," (Doc. No. 4-2 at 4), to the extent that such a provision may be read to entitle an individual to a particular amount of incentive compensation when "earned," even if the Plan is later amended or modified, the SICP's inclusion of a provision reserving Defendants' right "to make adjustments in the amount and distribution of incentive compensation in the event of circumstances unforeseen or to insure a fair and equitable final arrangement" would appear to retain for Defendants the ultimate discretion to adjust the amount and distribution of incentive compensation, even after it was "earned."

[8] Because Plaintiff's Amended Complaint fails to state a breach of contract claim for failure to pay a certain commission pursuant to the 2018 or 2019 SICP, it also fails to state a wage claim under either California or Pennsylvania law arising out the Defendants' failure to pay the

C.      **Plaintiff's Non-Contract Claims**

As noted above, in addition to his contract-based claims, Plaintiff's Amended Complaint also alleges claims of fraud (Count 2), negligent misrepresentation (Count 3), and promissory estoppel (Count 4).  The parties similarly dispute whether Pennsylvania law or California law applies to such claims,[9] as well as whether Plaintiff's Amended Complaint plausibly alleges such claims under the relevant law.

As an initial matter, the Court reiterates the principle discussed above that "[c]ontractual choice of law provisions . . . do not govern tort claims between the contracting parties unless the fair import of the provision embraces all aspects of the legal relationship."  See Jiffy Lube, 848 F. Supp. at 576.  Therefore, as a general matter, "with respect to tort claims, courts within this circuit have held that 'narrow choice of law provisions are generally held insufficient to encompass the contracting parties' tort claims.'"  See Grimm, 2008 WL 4925631, at *4 (quoting Wright v. McDonald's Corp., No. 91-2061, 1993 WL 53582, at *7 n.6 (E.D. Pa. 1993)).  The Court notes that Plaintiff does not attempt to argue that the choice of law provision in the Offer

---

disputed commission, as such a claim is derivative of Plaintiff's breach of contract claim.  See Anthony v. Iron Mountain, No. CV 20-05932-AB (ASx), 2020 WL 6937816, at *6 (C.D. Ca. Nov. 20, 2020) (concluding that, where a plaintiff's claim for unpaid wages under the California Labor Code was based on an oral agreement underlying his failed breach of contract claim, such claim was similarly subject to dismissal because it was derivative of his failed breach of contract claim); Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 954 (Pa. Super. Ct. 2011) (stating that "[t]o present a wage-payment claim under the [Pennsylvania Wage Payment Collection Law], the employee must aver a contractual entitlement to compensation from wages and a failure to pay that compensation") (internal quotation omitted).  Accordingly, in the absence of an actionable breach of contract claim under either California or Pennsylvania law, Plaintiff cannot maintain claims for a failure to pay wages pursuant to contract under either the California Labor Code or the Pennsylvania Wage Payment Collection Law.  Thus, the Court will grant Defendants' motion to dismiss Plaintiff's wage claim (Count 5) with prejudice.

[9] Plaintiff urges the Court to apply California law to the non-contract claims, or else "defer ruling on the choice-of-law issue until discovery has been conducted on the elements to be considered to determine which state's law has the most significant interest in the dispute."  (Doc. No. 12 at 7.)

Letter, which states that "[t]his letter will be governed by the laws of California" is broad enough

to encompass Plaintiff's tort claims asserted here.  Given that fact, as well as the narrowness of

the choice of law provision contained in the Offer Letter, which explicitly limits the choice of

law provision to the Offer Letter itself and does not purport to encompass all matters relating to

the parties' relationship including potential tort claims, the Court finds that no explicit choice of

law provision governs Plaintiff's asserted tort claims.  See Grimm, 2008 WL 4925631, at *5

(holding that choice of law provisions in individual agreements addressed to the enforcement of

the agreements themselves, but not all matters related to the parties' relationship, were too

narrow to apply to claims outside the agreements).   As noted in Grimm, when no choice of law

provision applies to particular claims, those claims must be analyzed pursuant to the principles

articulated by the Third Circuit in Hammersmith.  The relevant framework requires the Court to

first determine if there "is an actual or real difference between potentially applicable laws."  See

Grimm, 2008 WL 4925631, at *5 (citing Hammersmith, 480 F.3d at 230).  The Court turns first

to Plaintiff's promissory estoppel claim.

### 1. Promissory Estoppel Claim

As noted above, "[i]f no difference between the applicable laws of each state exists, a

choice of law analysis is unnecessary."  See id. (citing Hammersmith, 480 F.3d at 230).

Defendants represent that there is "no appreciable difference" between the laws of Pennsylvania

and California with regard to Plaintiff's promissory estoppel claim, (see Doc. No. 9 at 13), and

Plaintiff does not challenge this representation in opposing Defendants' motion.  The Court's

review of the relevant law comports with this conclusion.[10]  Accordingly, "[d]ue to the Court's

---

[10]  In Pennsylvania, a claim for promissory estoppel requires an allegation that: "(1) the promisor
made a promise that [it] should have reasonably expected would induce action or forbearance on
the part of the promisee; (2) the promisee actually took action or refrained from taking action in
reliance on the promise; and (3) injustice can be avoided only by enforcing the promise."  See

situs and the lack of difference between each states' laws, the Court will apply Pennsylvania law" to Plaintiff's promissory estoppel claim.  See Grimm, 2008 WL 4425631, at *6.

The allegations of Plaintiff's Amended Complaint pertaining to his promissory estoppel claim include the following: "[a]t the end of 2018, Plaintiff was near to closing three orders over a three-year period with FirstEnergy" (Doc. No. 4 ¶ 9); "[a]t the direction of his superiors, Plaintiff consolidated the FirstEnergy deal from three (3) purchase orders that would have been completed over three (3) years into one (1) sale, so that the sales numbers would be more beneficial for Plaintiff's superiors in terms of sales numbers and profit margin" (id. ¶ 10); "[f]rom 2019 until 2020, the management team represented to Plaintiff that the company would exercise its discretion to include the combined award of the FirstEnergy deal under the 2018 SICP verbally and via emails" (id. ¶ 15); "Plaintiff reasonably relied on the representations of the management team that the 2018 SICP would apply to the FirstEnergy sale" (id. ¶ 16); "the management team misrepresented to the Plaintiff, verbally and in emails, that the 2018 SICP would apply to his commission on the FirstEnergy sale," and in reliance on such a representation, "Plaintiff continued working on the deal for the company and at the direction of the management team combined the three (3) separate purchases of the First Energy sale into a single deal, which deal was completed in December of 2019" (id. ¶¶ 42-43); Plaintiff "combined the three (3) separate purchases into one (1) deal to his financial detriment, relying on the management team's course of misrepresentations that the 2018 SICP would apply to the

---

Zandier v. Babcock & Wilcox Construction Co. Inc., et al., No. 2:13-cv-459-JFC, 2015 WL 757480, at *20 (W.D. Pa. Feb. 23, 2015) (quoting V-Tech Servs., Inc. v. Street, 72 A.3d 270, 276 (Pa. Super Ct. 2013) (internal quotation omitted)).  Similarly, a promissory estoppel claim under California law requires (1) a promise which the promisor reasonably expects to induce action or forbearance by the promisee, (2) resulting action or forbearance on the part of the promisee in reliance on the promise, and (3) the avoidance of injustice only by enforcement of the promise.  See Drennan v. Star Paving Co., 333 P.2d 757, 759 (Cal. 1958).

FirstEnergy commission," and that "[i]njustice can only be avoided by enforcing the promise/course of misrepresentation of the management team to apply the 2018 SICP to the First Energy sale" (id. ¶¶ 44-45).

Defendants' argument in support of their motion to dismiss this claim rests on the principle that the existence of an enforceable contract precludes relief on a claim for promissory estoppel, maintaining that "Plaintiff's promissory estoppel claim should be dismissed because Plaintiff's commission on the transaction that occurred in 2019 is governed by an express written agreement, namely, the 2019 SICP."  (Doc. No. 9 at 24.)  However, as discussed above, the Court has determined that neither the 2018 nor the 2019 SICP constitutes an enforceable contract between Plaintiff and Defendants for payment of a particular amount of incentive compensation; accordingly, that principle cannot constitute a basis for dismissal of Plaintiff's promissory estoppel claim.

Nevertheless, upon consideration of the allegations of the Amended Complaint and the relevant authorities, the Court finds that Plaintiff has failed to plausibly allege a claim of promissory estoppel.  As noted above, a claim for promissory estoppel requires allegations of (1) a promise which the promisor reasonably expects to induce action or forbearance by the promisee, (2) action or forbearance by the promisee in reliance on the promise, and (3) the avoidance of injustice only by enforcement of the promise.  See Zandier, 2015 WL 757480, at *20.  Further, the elements of promissory estoppel are "strictly enforced to guard against the 'loose application' of promissory estoppel."  See Peluso v. Kistner, 970 A.2d 530, 533 (Pa. Commw. Ct. 2009) (internal citation omitted)).  "The change in the plaintiff's position must be substantial, and there is 'no injustice in being deprived of a gratuitous benefit.'"  See id. (quoting Stelmack v. Glen Alden Coal Co., 196 A.2d 127, 130 (Pa. 1940)).

While Plaintiff alleges in a conclusory way that he "combined three (3) separate purchases into one deal to his financial detriment," Plaintiff fails to plausibly alleges an action that he took or refrained from taking in reliance on the alleged promise to his detriment.  To the extent that Plaintiff argues that he would have closed one – or all three – of the three FirstEnergy purchases earlier (in calendar year 2018) in order to receive a greater financial benefit from that transaction, had he known that the terms of the 2018 SICP would not ultimately be applied to the combined FirstEnergy transaction, he does not so allege.  In that regard, Plaintiff states only that "[a]t the end of 2018, Plaintiff was <u>near</u> closing three orders over a three-year period with FirstEnergy."  (Doc. No. 4 ¶ 9) (emphasis added).  The allegations of Plaintiff's Amended Complaint do not suggest that he refrained from closing a purchase in 2018 (under the terms of the 2018 SICP); instead, the allegations plausibly suggest only that he was "near closing" three orders at the end of 2018, not that he delayed any closing – to his financial detriment – in reliance on representations regarding whether the 2018 or 2019 SICP would apply to any such transaction.  Further, to the extent Plaintiff alleges that he detrimentally relied on representations made to him by virtue of the fact that he "continued working on the deal for the company," he does not allege that he had some other, more profitable, employment opportunity or course of action that he would have pursued had he known that the terms of the 2018 SICP would not ultimately be applied to any part of the FirstEnergy transaction.  In short, Plaintiff's Amended Complaint fails to allege facts supporting a plausible inference that he relied to his detriment on the alleged representations regarding the FirstEnergy sale.  See <u>Ndubizu v. Drexel Univ.</u>, 768 F. Supp. 2d 796, 801 (E.D. Pa. 2011) (noting that "any action in reliance on a promise must be detrimental before a plaintiff can prevail on a promissory estoppel claim").

Accordingly, in the absence of a plausible allegation of some action that Plaintiff took or refrained from taking – to his financial detriment – based on the alleged promises of Defendants, Plaintiff's Amended Complaint fails to state a promissory estoppel claim.  The Court will grant Defendants' motion to dismiss the claim (Count 4) without prejudice, and afford Plaintiff the opportunity to file a second amended complaint in the event he can plead some facts that may state a plausible claim for promissory estoppel.[11]  The Court turns to Defendants' arguments pertaining to Plaintiff's negligent misrepresentation (Count 3) and fraud (Count 2) claims.

### 2.    Negligent Misrepresentation and Fraud

As noted in Grimm, when no choice of law provision applies to particular claims, those claims must be analyzed pursuant to the principles articulated in Hammersmith.  The relevant framework requires the Court to first determine if there "is an actual or real difference between potentially applicable laws."  See Grimm, 2008 WL 4925631, at *5 (citing Hammersmith, 480 F.3d at 230).  Accordingly, the Court turns to an examination of Pennsylvania and California law pertaining to claims for fraud and negligent misrepresentation.

Pennsylvania law requires a plaintiff to allege the following with regard to a claim for fraud:  "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance."  See Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994) (citations omitted).  Pennsylvania law requires the following allegations with regard

---

[11] While Defendants argue in their reply brief that the Court should not afford Plaintiff the opportunity to amend any of his claims because any such amendment would be futile (Doc. No. 15 at 21), the Court will grant Plaintiff the opportunity to file a second amended complaint regarding his promissory estoppel claim because the Court cannot conclude definitively that further amendment of the claim would be futile.

to a claim of negligent misrepresentation: "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known of its falsity, (3) with an intent to induce another to act on it; (4) which results in injury to the party acting in justifiable reliance on the misrepresentation."  See Bilt-Rite Contractors, Inc. v. The Architectural Studio, 866 A.2d 270, 277 (Pa. 2005) (citation omitted).  Pennsylvania's causes of action for fraud and negligent misrepresentation generally track the elements of such torts set forth in the Restatement (Second) Torts.  See id.; Gibbs, 647 A.2d at 889.  Under California law, the elements of the torts of fraud and negligent misrepresentation largely mirror Pennsylvania law. See Jacobs v. Sustainability Partners, LLC, et al., No. 20-cv-01981-PJH, 2020 WL 5593200, at *14 (N.D. Ca. Sept. 18, 2020) (stating that fraud cause of action under California law consists of the following elements: (1) a misrepresentation, (2) made with knowledge of its falsity, (3) intent to induce reliance, (4) justifiable reliance, and (5) resulting damages) (citations omitted)); Cal. Pub. Employees Ret. Sys. v. Moody's Investor Service, Inc., 226 Cal.App. 4th 643, 661, 172 Cal. Rptr.3d 238 (2014) (setting forth the following elements of a negligent misrepresentation cause of action under California law: (1) a misrepresentation, (2) made without reasonable ground to believe in its truth, (3) with intent to induce reliance of another on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damages) (citation omitted)).

Despite the similarities between the elements of fraud and negligent misrepresentation claims under Pennsylvania and California law, Defendants maintain that actual differences exist between the laws of California and Pennsylvania with specific regard to the defenses available to Plaintiff's fraud and negligent misrepresentation claims.  Defendants note that "under Pennsylvania law, the economic loss doctrine and the gist of the action doctrine are available

defenses to Plaintiff's fraud and negligent misrepresentation claims," whereas under California

law, "the economic loss doctrine is narrower in scope and does not apply in cases involving

allegations of affirmative fraud." (Doc. No. 9 at 12-13.) Regardless, Defendants assert that

these distinctions present only a "false conflict" because "California has no interest in applying

its laws to this dispute", because "California's only connection to this case is an unrelated term

in an unrelated Offer Letter from an entity that no longer exists." (Id. at 13.) Defendants argue

that "[b]y contrast, Pennsylvania has a significant interest because Plaintiff is a resident of

Pennsylvania, performs work in Pennsylvania, and the commission at issue was earned in

Pennsylvania." (Id.) Accordingly, Defendants maintain that Pennsylvania is the only interested

state.

Plaintiff urges the Court to apply California law to his fraud and negligent

misrepresentation claims, pointing to the fact that the company with whom Plaintiff originally

entered into the December 4, 2012 contract "had offices in Sunnyvale, California with the

company's CEO and President also based there," and further that the "company's successor,

ABB Enterprise Software, has offices in San Jose, California, and presumably has employees

and conducts business in that state." (Doc. No. 12 at 8.) Further, in support of his alternative

argument that Court should defer a decision on the choice of law applicable to Plaintiff's non-

contract claims "until a factual record can be developed in discovery," Plaintiff maintains that

"the domiciles of the management team, the location of the tortious acts, and the places where

the defendants conduct business will all be explored in discovery." (Id. at 8-9.)

The Court finds it unnecessary to definitively resolve which state's law – Pennsylvania or

California – applies to Plaintiff's fraud and negligent misrepresentation claims for purposes of

discerning the scope of defenses available to such claims because the Court concludes that, under

either Pennsylvania or California law, for the reasons described above in connection with his promissory estoppel claim, Plaintiff's Amended Complaint fails to plausibly allege that he took action in justifiable reliance on Defendants' representations to his financial detriment, and therefore, his Amended Complaint fails to state a claim for fraud or negligent misrepresentation. Under either state's law, claims of fraud or negligent misrepresentation require that the complaining party act in justifiable reliance on the misrepresentation and that some injury result. For the same reasons articulated <u>supra</u> in connection with Plaintiff's promissory estoppel claim, Plaintiff's Amended Complaint fails to plausibly allege that he acted or refrained from acting in reliance on any alleged misrepresentations to his detriment.  He does not allege that he would have closed one – or all three – of the three FirstEnergy purchases in calendar year 2018 to receive a greater financial benefit had he known that the terms of the 2018 SICP would not ultimately be applied to transaction, nor does he allege that he would have pursued some other, more profitable project or employment opportunity had he realized that the terms of the 2018 SICP would not be applicable to the FirstEnergy transaction.  Accordingly, Plaintiff's Amended Complaint fails to allege facts supporting a plausible inference that he justifiably relied on the alleged misrepresentations, suffering injury as a result.

In the absence of a plausible allegation that he justifiably relied on the alleged misrepresentations and suffered injury as a result, the Court will dismiss Plaintiff's claims of fraud (Count 2) and negligent misrepresentation (Count 3) without prejudice and afford Plaintiff the opportunity to file a second amended complaint in the event he can plead some facts that may state a plausible claim for negligent misrepresentation or fraud, because the Court cannot conclude definitively that further amendment of these claims would be futile.[12]

---

[12] However, as to Plaintiff's fraud claim, the Court notes that, even if Plaintiff's Amended Complaint pleaded allegations of justifiable reliance sufficient to support a claim of fraud, that

## IV.     CONCLUSION

For all of the foregoing reasons, the Court will grant Defendants' motion to dismiss.  An

appropriate Order follows.

---

claim would still be subject to dismissal under Federal Rule of Civil Procedure 9(b), which
requires that "[i]n all averments of fraud or mistake, the circumstances causing fraud or mistake
shall be stated with particularity."  See Fed. R. Civ. P. 9(b).  Plaintiff's allegations regarding the
circumstances constituting fraud consist of the following: "[f]rom 2019 until 2020, the
management team engaged in a course of misrepresentations causing Plaintiff to believe that the
company would exercise its discretion to include the combined award of the FirstEnergy deal
under the 2018 SICP verbally and via emails," and that "[t]he course of intentional
misrepresentation (verbal and email) of the management team to the Plaintiff regarding the
application of the 2018 SICP was done intentionally or with reckless disregard for the truth."
(Doc. No. 4 ¶¶ 30, 35.)  Plaintiff argues that alleging a course of misrepresentation "[f]rom 2019
until 2020" is a sufficiently particular allegation of "date, place and time" of the alleged course
of misrepresentations, and that the "specifics of where and what time are best explored in
discovery."  (Doc. No. 12 at 11.)  The Court cannot agree that such allegations suffice to state the
"circumstances causing fraud or mistake" with "particularity" as required by Federal Rule of
Civil Procedure 9(b).  See, e.g., Korinko v. Come Ready Nutrition, LLC, No. 2:20-cv-226, 2020
WL 4926177, at *7 (W.D. Pa. Aug. 21, 2020) (dismissing fraud claim where the complaint
"provide[d] no language of the allegedly false statement(s), and allege[d] no date, place, or time
that the statements were made").